Carl L. HOLSEY, M.D., Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation, Detroit Receiving Hospital & University Health Center, Inc., a Michigan non-profit corporation, Severally and jointly, Defendants.

No. 95–CV–40388–FL.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 29, 1996.

See also 944 F.Supp. 570.

Todd J. Shoudy, Dykema and Gossett, Bloomfield Hills, MI, Joseph A. Ritok, Dykema and Gossett, Detroit, MI, for Detroit Receiving Hosp.

Thomas R. Paxton, Eggenberger, Eggenberger, Detroit, MI, for UNUM Life Ins. Co. of America.

John A. Dominic, Zamler, Mellen & Shiffman, P.C., Southfield, MI, for Carl L. Holsey.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT UNUM LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff, Carl L. Holsey ("Holsey"), commenced this action in September, 1995, alleging breach of contract and violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") against Detroit Receiving Hospital ("DRH"), his employer, and UNUM Life Insurance Company ("UNUM"). Holsey seeks damages for disability benefits he claims were wrongfully denied to him under a disability policy provided by UNUM. UNUM filed its Motion for Summary Judgment on July 18, 1996. In that motion, UNUM specifically argues that 1) Holsey's breach of contract claim is preempted by ERISA; 2) this court is limited to reviewing the administrative record that was before UNUM at the time UNUM made its decision to deny benefits to Holsey; 3) this court should invoke the "arbitrary and capricious" standard of review and find that UNUM did not so act; and 4) this court should uphold UNUM's denial of benefits to Holsey as appropriate. On July 19, 1996, Holsey filed a Motion for Summary Judgment. In that motion, Holsey argues that the denial of disability benefits was a breach of the insurance contract as it was not consistent with the plan.

For the reasons set forth below, Defendant UNUM's Motion for Summary Judgment is granted and Plaintiff Holsey's Motion for Summary Judgment is denied.

## I. Background

Holsey, an anesthesiologist, was hired by DRH in 1991. As part of his benefits package with DRH, Holsey was provided a disability policy through UNUM. Holsey, who was first diagnosed as diabetic in the early 1980s and has been dependent on insulin since 1988, suffered from diabetes mellitus at the time he was hired by DRH. The effective date of the disability policy was August 1, 1991. Holsey was first treated for Glaucoma in October of 1991. In January, 1992, Holsey underwent a trephinotrabeculectomy for deteriorating vision of the left eye. In June of 1992, Holsey was admitted to the hospital with congestive heart failure and worsening renal dysfunction. Upon his discharge, the congestive heart failure had resolved. Holsey last worked on June 18, 1992. On June 29, 1992, Holsey was again admitted to the hospital, this time for end-stage renal disease that was secondary to diabetes mellitus and hypertension. The physicians also diagnosed insulin dependent diabetes mellitus, hypertension and glaucoma. Following the operation of his left eye in January, 1992, Holsey claims he maintained functional vision in his right eye until approximately November 16, 1992. On November 23, 1992, Holsey completed an application for disability benefits ("Application") in which he listed shortness of breath and fatigue as the reason for his disability. Holsey was denied disability benefits by UNUM on March 12, 1993 because UNUM claimed his disability was due to a pre-existing condition of diabetes. Holsey sought reconsideration of UNUM's denial which was likewise denied on or about June 10, 1993.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a Motion for Summary Judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States

Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### III. Analysis

#### 1. ERISA Preemption

■ The first argument UNUM makes is that Holsey's breach of contract claim is governed by ERISA and therefore should be preempted. ERISA defines an employee benefit plan as:

> any plan, fund or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise,* (A) medical surgical, or hospital care or benefits, or *benefits in the event of* sickness, accident, *disability,* death or unemployment....

29 U.S.C. § 1002(1). Clearly, the instant disability insurance policy provided to Holsey by his employer, Detroit Receiving Hospital, is consistent with the definition of an employee benefit plan and is therefore governed by ERISA.

Furthermore, it is well settled that State law claims are preempted by ERISA if they "relate to" an employee benefit plan. 29 U.S.C. § 1144(a) provides, in relevant part, that "[ERISA] shall supersede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan." (emphasis added) The courts have interpreted "relate to" in a broad manner such that if the claim has a connection or reference to an employee benefit plan then it relates to that plan. *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). See *Van Camp v. AT & T Info. Sys.,* 963 F.2d 119, 122 (6th Cir. 1992) (stating that "state law claims, and state court decisions resolving those claims, insofar as they ... relate to any employee benefit plan, are preempted by ERISA").

Holsey's Second Amended Complaint alleges the following:

> 12. That although benefits/payments have been demanded, the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA, has breached the contract and refuses to pay those benefits/payments owed to the Plaintiff, CARL L. HOLSEY, M.D., to wit: long term disability payments of $96,000 per year.

> 15. That on or about June 10, 1993, UNUM LIFE INSURANCE COMPANY OF AMERICA denied Plaintiff's request for reconsideration and thereby breached the contract as entered into for the benefit of Plaintiff CARL L. HOLSEY, M.D.

Based on a plain reading of Holsey's complaint, the breach of contract claim in this action "relates to" an employee benefit plan. Accordingly, the breach of contract claim is preempted by ERISA and summary judgment is granted in favor of UNUM as to that claim.

#### 2. Record on Review

■ The second argument raised by UNUM is that the court should only review evidence that was before the administrator at the time the decision to deny benefits was made. Whether a court reviews an ERISA action under a *"de novo"* standard or an "arbitrary and capricious" standard, (*see* discussion *infra*), it will look only to the evidence that was before the Administrator at the time the final decision was made. *See*

*Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) (limiting review to evidence before Administrator when "arbitrary and capricious" standard is invoked). *See also McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 431, n. 1 (6th Cir.1989) (limiting review to evidence before Administrator when *de novo* standard is invoked). No additional information is examined. *Perry*, at 963.

■ The only issue on this point is a letter sent by Dr. Migdal on behalf of Holsey on May 25, 1993 ("Migdal letter") which was received by UNUM on June 10, 1993, the same day that UNUM made their final decision to deny disability benefits to Holsey. Even though that letter was untimely, UNUM admits that they re-examined Holsey's claim in light of that letter. As such, it is appropriate for this court to also consider that letter.

**3. Applicable Standard of Review**

■ UNUM asserts that an "arbitrary and capricious" standard of review should be used in this case. The Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), stated that:

> [A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan [in which case an "arbitrary and capricious" standard of review should be used].

*Id.* at 115, 109 S.Ct. at 956–57.

In support of its position that an "arbitrary and capricious" standard should be applied, UNUM cites the following policy language to demonstrate that it had discretion under the policy:

> When the [Insurance] Company *receives* proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:
>
> 1. disability; and
>
> 2. regular attendance of a physician
>
> The proof must be given upon request and at the insured's expense. (emphasis in the original)

In support of their position that this language is discretionary, UNUM cites *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 983–84 (6th Cir.1991), which held that "language requiring the claimant to prove his disability to the company was sufficient to compel the use of the arbitrary and capricious standard of review." However, the language in the *Miller* policy was quite different from the language in the instant policy. The policy language in *Miller* provided as follows:

> An Employe (sic) shall be deemed to be totally disabled only if that Employe (sic) is not engaged in regular employment or occupation for remuneration (sic) or profit and, *on the basis of medical evidence satisfactory to the Insurance Company,....*

*Miller*, 925 F.2d at 983. (emphasis in the original).

The italicized language was emphasized by the Sixth Circuit as demonstrating the Administrator's discretion. However, unlike in *Miller*, such discretionary language is absent from the instant policy. In particular, there is no express requirement in the instant policy that the administrator determine, in its own *discretion*, whether the submitted proof of disability is satisfactory. As such, UNUM does not have the requisite discretion under the policy necessary for this court to invoke the "arbitrary and capricious" standard of review. *Cf. Renfro v. UNUM Life Ins. Co. of America*, 920 F.Supp. 831, 837–38 (E.D.Tenn.1996) (finding that the same policy language did not "expressly or impliedly grant[ ] discretionary authority with respect to decisions on claims for disability benefits" but declining to decide whether a *de novo* review standard was appropriate since even under that standard UNUM's decision must be upheld). Therefore, this court will review UNUM's determination *de novo*. Under a *de novo* review, this court gives no deference

or any presumption of correctness to the decision of the administrator.

### 4. UNUM's denial of benefits was appropriate

■ UNUM argues that summary judgment is warranted because no genuine issue of material fact exists as to the appropriateness of their decision to deny benefits to Holsey based on his pre-existing condition of diabetes. Holsey, on the other hand, argues that his disability, blindness, is not due to a pre-existing condition and that, regardless, his disability occurred after the exclusionary period set out in the policy had lapsed.

The UNUM policy provides, in relevant part, that:

PRE–EXISTING CONDITION EXCLUSION

This policy will not cover any disability:

1.  caused by, contributed to by, or resulting from a pre-existing condition; and

2.  which begins in the first 12 months after an insured's effective date.

A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.

Moreover, the UNUM policy provides that:

"Disability" and "disabled" mean that because of injury or sickness:

1.  the insured cannot perform each of the material duties of his regular occupation....

Note: For physicians, "regular occupation" means the specialty in the practice of medicine which the insured was practicing just prior to the date disability started.

UNUM asserts that Holsey's disability is due to his pre-existing condition of diabetes. UNUM establishes Holsey's diabetes as a pre-existing condition by showing that Holsey has been diabetic for over 10 years and that he had taken prescription drugs as treatment for his diabetes within the three months prior to the effective date of the policy. UNUM provides pharmacy records which show that Holsey was prescribed insulin during the three month pre-policy period thereby satisfying the policy definition of a "pre-existing condition."

UNUM next argues that Holsey's disability is shortness of breath and fatigue. In support of their position, UNUM provides Holsey's own disability benefits application which listed "congestive heart failure, pulmonary edema, shortness of breath, fatigue" as the reasons for Holsey's disability.

Then, UNUM argues that Holsey's disability was caused by his pre-existing condition of diabetes. UNUM provides medical records from Holsey's own doctors which show that on May 27, 1992 Holsey "got sick and couldn't breathe" and was hospitalized at Harper Hospital due to kidney disease. UNUM also provides records which show that in June, 1992 Holsey was diagnosed with end stage renal disease and glaucoma that was secondary to diabetes.

Finally, UNUM asserts that Holsey's disability occurred within twelve months of the effective date of the policy and that therefore, the disability is excluded from coverage under the policy. In support of their position, UNUM again offers Holsey's application, in which Holsey lists his last day of work as June 18, 1992. UNUM also provides a letter from Dr. M. Adam Hall, ("Hall letter"), Holsey's physician, dated June 30, 1992 in which Dr. Hall states that Holsey should "be declared totally disabled". These dates clearly fall within the one year exclusionary period of the policy, therefore the disability would not be covered.

Holsey, on the other hand, now claims that shortness of breath is not the cause of his disability. Instead, he argues that his disability is his lack of adequate vision. Moreover, Holsey argues that his blindness is due to glaucoma, which he maintains was not a preexisting condition since it was first treated in October of 1991. Finally, Holsey claims that, regardless, he became disabled, i.e., lost adequate vision, in November, 1992, which is outside the one year exclusionary period of the policy and that he is therefore covered under the policy.

In support of his position, that blindness is his disability—not shortness of breath and fatigue—Holsey offers the Migdal letter which was submitted to UNUM, on behalf of Holsey, as part of Holsey's request for reconsideration of UNUM's denial of benefits under the policy. In that letter, Dr. Migdal opines that Holsey's disability is his lack of adequate vision. However, this letter directly contradicts Holsey's own statements in his application for disability benefits in which he said that his disability was shortness of breath and fatigue. Furthermore, it was written some six months after Holsey submitted his application and over two months after Holsey's claim was originally rejected. As such, its value is, at best, dubious.

Even assuming, as this court must in this Motion for Summary Judgment, that Holsey's disability is blindness, Holsey has, nevertheless, been unable to show that his disability was not "caused by, contributed to by, or result[ed] from" diabetes, i.e., that his blindness is due to glaucoma which is unrelated to his diabetes. Holsey only offers an illegible medical record of some sort which seems to say "surgery for Glaucoma", but which also appears to say "Diabetes mellitus." Moreover, the Migdal letter states that Holsey "clearly stated that he had diabetes" and that "well-known complications of diabetic disease are renal disease and ophthalmologic complications." As such, that letter actually supports UNUM's position that Holsey's disability is caused by his preexisting diabetic condition.

Finally, in support of his position that his disability occurred after the one year exclusionary period, Holsey offers a letter dated November 16, 1992 from Robert J. Peebles, Vice President, Human Resources at DRH ("Peebles letter"), which states that: "[o]n December 14, 1992, [Holsey] will be going on long term disability and will then receive an annual salary of $96,000." However, this letter does not establish when Holsey became disabled, i.e., unable to "perform each of the material duties of his regular occupation" as per the UNUM policy, nor does it provide any explanation of the nature of the disability. Moreover, Holsey's own application directly contradicts this argument by

stating that his last day of work was June 18, 1992.

UNUM, in retort, argues that even if Holsey's disability is blindness, it was, nevertheless, caused by Holsey's preexisting condition of diabetes and occurred within the first 12 months of the policy. Therefore, it was not covered by the insurance policy.

UNUM proffers the Hall letter, dated June 30, 1992, in support of their argument that Holsey's blindness was a result of diabetes mellitus which was a pre-existing condition. The letter states that Hall was treating Holsey since October, 1991 for eye complications of glaucoma and diabetes mellitus and that his deteriorating vision is due to "proliferative diabetic retinopathy." UNUM also offers the Migdal letter, dated May 25, 1993, in which Migdal states that Holsey "clearly stated that he had diabetes" and that "well-known complications of diabetic disease are renal disease and ophthalmologic complications."

In support of its position that Holsey became disabled within the first twelve months of the policy period, UNUM again offers Holsey's application in which Holsey admits that his last day of work was June 18, 1992. In addition, UNUM also offers the Hall letter in which Hall states that: "For the benefit of Dr. Carl Holsey and the patients with whom (sic) whose care he is charged, I strongly recommend that Dr. Holsey be declared totally disabled."

As such, UNUM has shown that Holsey's disability, whether shortness of breath and fatigue or blindness, is a result of his preexisting diabetic condition. Moreover, UNUM has shown that Holsey became disabled within the first year of the policy period.

Holsey, on the other hand, has not provided any evidence that his disabling condition was caused by, contributed to by, or resulted from anything other than the diabetes mellitus. Furthermore, Holsey fails to show that his disability occurred anytime after the one year exclusionary period. Holsey only offers the Peebles letter which, although stating that Holsey will go on long term disability as of December, 1992, does not state when Hol-

sey became disabled. Moreover, this letter is contradicted by Holsey's own statements as well as statements made by his doctors.

This court finds that no reasonable trier of fact could find that UNUM inappropriately denied Holsey benefits under the disability policy. Accordingly, summary judgment in favor of defendant UNUM is granted.

### ORDER

Therefore, it is hereby **ORDERED** that Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA's Motion for Summary Judgment be **GRANTED** and Plaintiff, CARL L. HOLSEY, M.D.'s Motion for Summary Judgment be **DENIED.**

**IT IS FURTHER ORDERED** that a final judgment be entered in favor of the defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA, and that plaintiff, CARL L. HOLSEY, M.D. take nothing.

**SO ORDERED.**